IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 11-cv-02996-LTB

DAVID VITITOE,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

_____

ORDER

_____

      Plaintiff David Vititoe appeals Defendant's (the "Commissioner") final administrative decision denying his claim for disability insurance benefits under Titles II of the Social Security Act (the "Act").  Jurisdiction in this appeal is proper pursuant to 42 U.S.C. § 405(g).  Oral argument would not materially assist in the determination of this appeal.  After consideration of the briefs and the record, I affirm the Commissioner's decision.

**I.  Statement of the Case**

      A hearing on Plaintiff's claim was held before an administrative law judge (the "ALJ") on July 20, 2010.  On September 10, 2010, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act.  The Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's September 10, 2010 decision the Commissioner's final decision for purposes of my review.  Plaintiff timely filed this appeal seeking review of the Commissioner's final decision.

## II.  Statement of Facts

### A.  Background

Plaintiff was born on June 22, 1971, making him 36 years old at the time of his alleged disability onset date.  Administrative Record ("AR") 191.  Plaintiff has at least a high school education and has worked in the past as a human resources manager, sales clerk, and stockbroker.  AR 51 & 227.  Plaintiff alleges that he became disabled on October 26, 2007 as a result of injuries he sustained in a motorcycle accident.  AR 226.  Plaintiff was unemployed at the time of the accident, and his insured status for disability insurance benefits expired on June 30, 2008.  AR 23 & 297.

#### 1.  Medical Evidence Before the ALJ

Following his accident, Plaintiff underwent surgery including a craniotomy with neurosurgery, dural repair and frontal lobe resection with neurosurgery, orbital roof repair, and intercranial bolt placement.  AR 301 & 454.  On November 26, 2007, Plaintiff was transferred to Columbia Spalding Rehabilitation Hospital ("Spalding") for physical rehabilitation services and a neurocognitive assessment.  AR 290-91.  At that time, Plaintiff was doing well physically and ambulating independently but was very impaired neurocognitively with very poor insight, poor memory, and poor recall.  AR 291 & 295.  At the time of his December 7, 2007 discharge from Spalding, Plaintiff continued to do well physically but required structure and support for his memory problems though he continued to show significant improvement.  AR 291-92.  For a short time after his discharge, Plaintiff continued to receive physical and occupational therapy from Spalding on an outpatient basis.  AR 310 & 317.

2

On January 7, 2008, Plaintiff was examined by David Mulica, M.D., of Kaiser Permanente.  AR 355.  Plaintiff reported to Dr. Mulica that he felt fine and that his only problem was that his right foot hurt.  *Id.*  Dr. Mulica felt, however, that Plaintiff had limited insight into his deficits and that Plaintiff was probably more impaired than he appeared at that examination. *Id.*  Dr. Mulica suggested that Plaintiff follow up with a speech pathologist and return for a follow up appointment that spring or about 6 months from the date of his accident.  *Id.*

Per Dr. Mulica's recommendation, Plaintiff was seen by Ellen Minick, a speech therapist on February 19, 2008.  AR 345. Ms. Minick observed that Plaintiff exhibited excellent planning, self-monitoring, and self-correction while successfully and timely completing a complex multi-step task in the face of  numerous distracters.  *Id.*  Ms. Minick assessed Plaintiff's rehab potential as "good."  *Id.*

On April 18, 2008, Bruce Valette, Ph.D., evaluated Plaintiff in connection with his disability claim.  AR 617-21.  Dr. Valette noted that Plaintiff was able to perform various activities of daily living without help and to follow the storyline of movies and TV shows.  AR 618.  Dr. Valette observed that Plaintiff had an appropriate affect; clear organization and character of speech; and an organized and clear thought process.  *Id.*  Dr. Valette administered the Wechsler memory tests to Plaintiff and found that Plaintiff's scores fell in the average range on all areas of memory functioning except visual immediate memory which was above average. AR 619-20.   Dr. Valette diagnosed Plaintiff with nonspecific cognitive disorder; traumatic brain injury; moderate psychosocial stressors; and a GAF score of 70-75.  AR 620.

Plaintiff was again seen by Dr. Mulica on April 21, 2008.  AR 484.  Dr. Mulica noted that Plaintiff was complaining of angry outbursts and left ankle pain.  *Id.*  Dr. Mulica prescribed Celexa to Plaintiff and recommended that Plaintiff follow up with him by phone in about a month.  *Id.*

On April 24, 2008, Gayle Frommelt, Ph.D., a psychologist, reviewed the record and opined that Plaintiff's organic mental disorder did not rise to the level of a "severe" impairment.  AR 274.  Dr. Frommelt also found that Plaintiff had mild limitations in activities of daily living; social functioning; and maintaining concentration, persistence, or pace and that Plaintiff had no episodes of decompensation.  AR 284.

On May 19, 2008, Lauren Moran, M.D., examined Plaintiff in connection with his disability claim.  AR 622-25.  Dr. Moran noted that Plaintiff complained of pain in his right ankle and lower back and numbness in his right thigh but that Plaintiff's main problem was his memory.  AR 622.  From a physical standpoint, Dr. Moran concluded that Plaintiff had no limitations with respect to sitting, standing, walking, lifting, carrying, bending, squatting, hearing, speaking, traveling, daily living activities, and performing repetitive motions with his hands.  AR 625.

Plaintiff was examined at Denver Health Medical Center on June 9, 2008 in connection with a DUI arrest.  AR 632-36.  Plaintiff appeared stable and denied that he had any medical or emotional problems.  AR 632 & 634.

In correspondence dated April 27, 2009, Mark K. Matthews, M.D., stated that he had been Plaintiff's primary care physician for 6 years.  AR 941.  According to Dr. Matthews, Plaintiff had a near complete recovery physically but was unlikely to return to the mental and

emotional condition he enjoyed prior to his motorcycle accident.  *Id.*  Specifically, Dr. Matthews stated that Plaintiff had significant memory problems with trouble finding works and ideas and poor insight; that Plaintiff was often impulsive and emotionally liable; and that Plaintiff was prone to outbursts of anger and depression.  *Id.*

Plaintiff's next treatment notes from Dr. Mulica are dated March 24, 2010, almost two years after Dr. Mulica had last seen him.  AR 714.  At that time, Dr. Mulica prescribed Ativan to Plaintiff to address his feelings of increased anger.  *Id.*

On April 22, 2010, Dr. Mulica completed a physical and mental functional capacity questionnaire for Plaintiff.  AR 679-80.  From a physical standpoint, Dr. Mulica opined that Plaintiff could stand and/or walk no more than 2 hours and sit no more than 4 hours during an 8-hour workday; rarely lift 10 pounds; never lift 20 pounds or more; rarely finger, grasp, and handle; and never stoop or crouch; and that Plaintiff would miss more than 4 days per month due to his impairments or treatment.  AR 679.   From a mental standpoint, Dr. Mulica opined that Plaintiff had moderate restrictions in activities of daily living; moderate difficulties in maintaining social difficulties in maintaining concentration, persistence, or pace; and marked episodes of decompensation.  AR 680.

In May and June of 2010, Paula Santistevan, D.C., provided chiropractic treatment to Plaintiff for neck, upper back, and leg pain.  AR 946-50.

### 2.  Additional Medical Evidence

Following the ALJ's decision, Plaintiff provided the Appeals Council with (1) a February 13, 2008 Medical Statement from Dr. Mulica indicating that Plaintiff was unable to return to work due to his traumatic brain injury and (2) a letter dated November 11, 2010 from Dr.

Santistevan in which she states that Plaintiff cannot lift, pull, push, or reach overhead, sit for more than 1 hour at a time, work with the public, or engage in any type of employment. *See* AR 7 & 951.

Additionally, Plaintiff has attached the following documents to his opening brief: (1) a 10 page report from Alan Weintraub, M.D. dated January 22, 2012 captioned "independent medical examination" in which Dr. Weintraub opines that based on his review of the records and examination Plaintiff is "100% totally and permanently disabled in terms of his ability to ... return to any type of competitive gainful employment.;" (2) an addendum to Dr. Weintraub's report regarding the results of a brain scan performed on Plaintiff January 6, 2012; and (3) a neuropsychological assessment completed by James C. Berry, Ph.D., in January 2012 in which Dr. Berry opines that Plaintiff is "not currently capable to participate in competitive employment."

**B.  Plaintiff's Disability Hearing**

At the July 20, 2010, hearing, Plaintiff testified that he forgot things all the time and had poor judgment and impulse control.  AR 36& 43.  Plaintiff's wife also testified that Plaintiff had memory problems.  AR 45.  From a physical standpoint, Plaintiff testified that he experienced shooting pain in his leg, back, and shoulders if he sat or stood too long; that he needed to lie down for 60-90 minutes after sitting at his computer for 10-15 minutes; that his right leg would buckle if he did not support himself; and that he would get dizzy and fall over if he looked up. AR 36, 38, 44 & 47.

The ALJ asked the vocational expert ("VE"), if an individual of the same age and education as Plaintiff who could perform light work so long as he was not required to stoop,

crouch, or climb stairs and ramps more than occasionally; climb scaffolds, ladders, and ropes, balance, kneel, or crawl; sit for more than 45 minutes at one time without the opportunity to stand; push or pull with the feet; work at unguarded heights and use unguarded hazardous mechanical equipment; do more than the lower end of detailed instructions; and have no more than superficial interaction with the public could perform any of Plaintiff's past relevant work. AR 52. The VE responded no but opined that such an individual could work as a photocopy machine operator and an office helper. *Id.*

The ALJ then asked the VE if an individual with all of the other restrictions and requirements from his previous hypothetical but who could only understand, remember, and carry out simple instructions could perform jobs existing in the national economy. AR 53. The VE responded that such an individual could also work as a photocopy machine operator and an office helper. *Id.*

The ALJ then asked the VE if an individual with all of the other restrictions and requirements from his first hypothetical but who was limited to sedentary work such that the individual could not lift more than ten pounds or stand and walk for more than two hours in an eight-hour workday could perform jobs existing in the national economy. *Id.* The VE responded that such an individual could work as an address clerk and a final assembler. *Id.*

Finally, the ALJ asked the VE if an  an individual with all of the other restrictions and requirements from his first hypothetical but who was limited to sedentary work and simple instructions could perform jobs existing in the national economy. *Id.* The VE responded that such an individual could also work as an address clerk and a final assembler. *Id.*

In response to questioning from Plaintiff's attorney, the VE testified that an individual with all of the restrictions and requirements from the ALJ's hypotheticals who could only stand or walk for up to 2 hours per day and who either had to lay down for one hour after sitting for 15-30 minutes or sit for a total of 4 hours or less per day would not be able to engage in full time competitive employment.  AR 54-5.

**C.  The ALJ's Decision**

In his ruling, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 416.920(a).  At the first step of the sequential process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 26, 2007 through his last insured date of  June 30, 2008.  AR 23.  At the second step, the ALJ determined that Plaintiff had severe impairments of "status-post multiple skull and facial fractures requiring two repair surgeries/craniotomies ... resulting in mild cognitive disorder,  and mild degernatiave lumbar disk disease."  *Id.*  At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 24.

At the fourth step of the sequential process, the ALJ determined Plaintiff had the RFC to perform light work but that Plaintiff should not be required to (1) sit for more than 45 minutes at one time without the opportunity to stand; (2) stoop, crouch or climb ramps or stairs more than occasionally; (3) balance, kneel, crawl, or climb ladders, ropes or scaffolding; (4) push or pull with the feet; (5) work at unguarded heights or near unguarded hazardous mechanical equipment; (6) do more than the lower-end of detailed instructions; and (7) have more than superficial interaction with the public.  AR 25.

After concluding that Plaintiff was unable to perform any past relevant work through the last insured date of June 30, 2008, AR 20 & 24, the ALJ proceeded to the fifth step of the sequential process and concluded that there were a significant number of jobs in the national economy that Plaintiff was capable of performing.  AR 29.  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.  AR 29 & 30.

### III.  Standard of Review

In reviewing the Commissioner's decision,  I must determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1992); *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hamilton, supra,* 961 F.2d at 1498.  I "may neither reweigh the evidence nor substitute [my] discretion for that of the Administrative Law Judge." *Kelley v. Chater,* 62 F.3d 335, 337 (10th Cir. 1995).  Where evidence as a whole can support either the Commissioner's decision or an award of benefits, the Commissioner's decision must be affirmed.  *See Ellison v. Sullivan,* 99 F.2d 534, 536 (10th Cir. 1990).

### IV.  Analysis

On appeal, Plaintiff argues that the ALJ erred in not properly considering the opinions of Drs. Mulica, Matthews, and Santistevan and that the case should be remanded for consideration of the additional evidence he has provided in connection with this appeal.  I disagree.

**A. Dr. Mulica's Opinions**

Generally, an ALJ gives more weight to the opinions of a claimant's treating physicians. 20 C.F.R. § 404.1527(d)(2).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence," it is given controlling weight.  *Id.*  When a treating physician's opinion is not given controlling weight, it is still entitled to deference and other enumerated factors must be applied to determine the appropriate weight to give the opinion.  *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003) (*quoting* Soc. Sec. R. 9602p, 1996 WL 374188 at *4).  These factors include length of the treatment relationship; frequency of examination; nature and extent of the treatment relationship; supportability; consistency; and specialization.  20 C.F.R. § 404.1527(d)(2) - (6).

In all cases, the ALJ must give "good reasons" for the weight given a treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).  The ALJ need not, however, expressly apply each of the enumerated factors in deciding what weight to give a treating physician's opinion.  *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).  The ALJ's decision, however, must be "sufficiently specific to make clear to any subsequent reviewer the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight."  *Watkins*, 350 F.3d at 1300 (citations omitted).

Here, prior to rejecting Dr. Mulica's opinions regarding Plaintiff's functional limitations, the ALJ discussed Plaintiff's entire treatment history with Dr. Mulica.  AR 27.  The ALJ noted the absence of any subjective complaints by Plaintiff regarding significant cognitive difficulties or any significant mental status findings to support the extreme functional limitations that Dr.

10

Mulica assessed.  AR 28.  The ALJ also noted that Dr. Mulica's April 22, 2010 functional

capacity assessment of Plaintiff was completed long after Plaintiff's last insured date of June 30,

2008.  *Id.*

Under the standards set forth above, the ALJ did not err in assigning no weight to Dr.

Mulica's April 22, 2010 opinions regarding Plaintiff's functional limitations.  Instead, the ALJ

properly considered the lack of support for these opinions in Plaintiff's treatment records and the

inconsistency of these opinions with Dr. Mulica's treatment records and other evidence in the

record.  Although Plaintiff now submits additional evidence from other health care providers to

support Dr. Mulica's opinions regarding his functional limitations, this evidence suffers from

one of the same defects as Dr. Mulica's April 22, 2010 opinions; that is, this evidence is dated an

inordinate amount of time after Plaintiff's last insured date of June 30, 2008.  *See Potter v. Sec.*

*of Health & Human Servs.,* 905 F.2d 1346, 1348-49 (10th Cir. 1990) ("... relevant analysis is

whether the claimant was actually disabled prior to the expiration of her insured status.").

In addition to Dr. Mulica's April 22, 2010 opinions, Plaintiff directs my attention to a

February 13, 2008 Medical Statement that Dr. Mulica submitted to the State Department of

Labor and Employment, Unemployment Insurance Operations in which Dr. Mulica states that

Plaintiff is unable to return to work indefinitely as a result of a traumatic brain injury.  AR 951.

Apparently, this document was provided to the Appeals Council after the ALJ issued his

decision.  AR 13.  While this document addresses the relevant time period, it too lacks

supportability and consistency with other relevant evidence in the record including Dr. Mulica's

own treatment notes and therefore does not provide a basis for reversing the ALJ's decision or

remanding the case for further consideration.

11

**B. Dr. Matthews' Opinions**

Although Plaintiff apparently challenges the ALJ's treatment of Dr. Matthews' opinions (*see* Plaintiff's Opening Brief, p. 23), he does not devote any of his lengthy brief to a discussion of this purported error.  Since the ALJ's decision does not reference Dr. Matthews' opinions, any alleged error must be in the ALJ's failure to consider these opinions.

Dr. Matthews' April 27, 2009 opinion that Plaintiff had a near complete physical recovery but continued to experience cognitive and emotional issues was unsupported by any treatment records; is in direct contradiction to Plaintiff's contention that he suffers from significant physical limitations; and provides little to no insight into Plaintiff's ability to maintain competitive employment.  Under these circumstances, I conclude that it is unnecessary to remand the case to the ALJ for consideration of Dr. Matthews' opinions.

**C.  Dr. Santistevan's Opinions**

Dr. Santistevan's November 11, 2010 opinions were issued after the ALJ's September 10, 2010 decision and were therefore not considered in connection with that decision.  Rather, Dr. Santistevan's November 11, 2010 opinions were first submitted to the Appeals Council which determined that these opinions related to a later time period than that considered by the ALJ and therefore did not affect the decision about whether Plaintiff was disabled as of June 30, 2008.  AR 4.   Accordingly, the Appeals Council did not make Dr. Santistevan's opinions part of the administrative record.  AR 7.

Under 20 C.F.R, § 404.970(b), the Appeals Council must consider evidence submitted with a request for review if the evidence is new, material, and related to the period on or before the date of the ALJ's decision.  *Chambers v. Barnhart,* 389 F.3d 1139, 1142 (10th Cir. 2004).

12

Newly submitted evidence that does not meet this criteria plays no further role in judicial review of the Commissioner's decision.  *Id.*

Here, not only are Dr. Santistevan's November 11, 2010 opinions dated 2 months after the ALJ's decision, they are also dated more than 2 years after Plaintiff's last insured date of June 30, 2008.  These opinions are therefore not chronologically relevant under either 20 C.F.R. § 404.470(b) or otherwise.  *See Potter, supra* ("... relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status.").  Accordingly, Dr. Santistevan's November 11, 2010 opinions do not provide a basis for reversing the ALJ's decision or remanding the case for further consideration.

**D.  The ALJ's Assessment of Plaintiff's RFC**

Apart from the medical opinions discussed above, Plaintiff also argues that the ALJ erred in assessing his RFC in light of his hearing testimony that he needed to lay down for 60-90 minutes after sitting at his computer for 10-15 minutes (AR 44) and the assertions in his reply brief about his limitations including his alleged inability to independently perform activities of daily living such as cooking and grocery shopping (AR 7).  I disagree that Plaintiff's hearing testimony and new allegations establish that the ALJ erred in assessing Plaintiff's RFC.

Credibility determinations are the province of the ALJ and will be upheld provided that they are supported by substantial evidence.  *Diaz v. Sec. of Health & Human Serv.,* 898 F.2d 774, 777 (10th Cir. 1991).  The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting affects of his impairments were not credible to the extent that they were inconsistent with the RFC he assessed for him.  This finding is supported by substantial evidence in the record including Dr. Mulica's treatment records and Dr. Moran's examination findings.

Plaintiff's statements about his current limitations which he argues are supported by Dr. Weintraub's January 22, 2012 report do not establish that the ALJ erred in assessing Plaintiff's credibility regarding his limitations as of June 30, 2008 or in assessing Plaintiff's RFC as of that date.

**E.  New Evidence**

Plaintiff argues that the 2012 reports from Drs. Weintraub and Berry which were not provided to either the ALJ or the Appeals Council warrant a remand under 42 U.S.C. § 405(g).  I disagree.

Section 405(g), 42 U.S.C., provides that the Court may order that additional evidence be taken into account only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.  "Implicit in the materiality requirement ... is that the new evidence relate to the time period for which benefits were denied." *Bradley v. Bowen,* 809 F.2d 1054, 1058 (5th Cir. 1987) (internal quotations and citations omitted).

The 2012 reports of Drs. Weintraub and Berry fail to meet the materiality requirements because they were issued almost 4 years after Plaintiff's last insured date of June 30, 2008. Moreover, neither Dr. Weintraub nor Dr. Berry treated Plaintiff during the relevant time period. Accordingly, remand of this case for the ALJ's consideration of the 2012 reports of Drs. Weintraub and Berry is not warranted under 42 U.S.C. § 402(g).

## V.  Conclusion

Based on the applicable legal standards,  IT IS HEREBY ORDERED that the

Commissioner's decision is AFFIRMED for the reasons set forth above.


Dated: November ____15____, 2012 in Denver, Colorado.

BY THE COURT:


_____s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE